Electronically Filed - ST LOUIS COUNTY - September 13, 2023 - 03:25 PM

## IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
## STATE OF MISSOURI

| | |
|---|---|
| ROBERTSON FIRE PROTECTION DISTRICT, | )<br>)<br>) |
| Plaintiff, | ) Cause No: 23-CC03840 |
| v. | )<br>)<br>) Division: 2 |
| DONALD D. MINER, | ) |
| Defendant. | ) |
| Serve: Donald D. Miner<br>73 John Wesley Drive<br>Theodosia, MO 65761 | ) |

### FIRST AMENDED PETITION

#### Introduction

The Robertson Fire Protection District brings this action to recoup public money unlawfully paid to the defendant, Donald D. Miner. Defendant Miner served as the district's fire chief for roughly seven years. In May of 2020 the district's previous board of directors voted to approve a retirement agreement with Miner. The agreement vaguely called for the payment of "accrued leave" and "sick leave" to Miner, among other things, in exchange for Miner's service as a consultant to the district. Miner provided no post-retirement services to the district, yet his agreement resulted in the payment of taxpayer funds to him in an amount which vastly exceeded the retirement compensation due him per district policy. The compensation paid to Miner as a result of the agreement essentially amounted to a "golden parachute" for his previous service as chief.

The district submits that the agreement exceeded the scope of the previous board's lawful authority and was also so vague as to violate Section 432.070 of the Revised Statutes of Missouri,

rendering the agreement void. In simpler words, defendant Miner unlawfully mined the public fisc, and now the district wants its money back.

### Jurisdiction and Venue

1. This court has jurisdiction of this action pursuant to Sections 527.010 *et seq.*, RSMo. (Declaratory Judgment Act), and Article V, Section 14 of the Missouri Constitution.

2. Venue is proper pursuant to Section 508.010 RSMo., because the district is located in St. Louis County, defendant Miner is a resident of Missouri, and the acts complained of occurred in St. Louis County.

### Parties

3. Plaintiff Robertson Fire Protection District is a political subdivision and municipal corporation of the State of Missouri, created pursuant to Chapter 321 of the Revised Statutes of Missouri, to provide fire protection and emergency services to its St. Louis County constituents. As a public entity, the district is governed by Chapter 321 and by the germane provisions of other Missouri statutes and the Missouri Constitution.

4. Defendant Donald D. Miner, a resident of Ozark County, Missouri is a former fire chief of the district. Miner was hired by the district as its chief beginning January 1, 2013, and he retired on June 2, 2020.

### Miner's Retirement Agreement

5. Miner announced his retirement on May 26, 2020. On that same day the district's board of directors voted to approve a contract with defendant Miner, and the parties executed the contract. A copy of the agreement is attached as Exhibit A. The contract is styled as a "retirement employment agreement", and it appears to call for Miner's ongoing participation in legal matters, and perhaps other unspecified "transition/consultant" services.

6. The contract provided that as of June 3, 2020, Miner would "continue in the employ of Robertson using accrued leave . . . with full salary and benefits". The agreement did not provide a termination date; rather it stated that Miner would continue working "until all accrued leave exhausted [sic]". The agreement did not define "accrued leave", but it specifically excluded "sick leave". "Accrued sick leave" was to be "paid into Miner's VEBA account".

7. On information and belief, Miner failed to provide any services whatsoever to the district following his June 2, 2020 retirement.

### Miner's "Accrued Time" Payments

8. Beginning June 3 and through October 27, 2020, Miner was paid his full salary in cash, with the expenditures being offset by his "accrued time", which excluded sick leave but purportedly included vacation time, "department time", and holiday pay.

    A. Per district policy, vacation time did not accrue from year to year. On retirement, an employee would be paid vacation time that he or she had earned, but not used, during his or her year of retirement;

    B. District records do not reflect the number of vacation hours Miner had accrued as of June 2, 2020, but in accord with the noted policy, Miner's maximum accrual would have been 19 days of vacation;

    C. Assuming Miner had accumulated, and had not used any of, his full allotment of 19 vacation days in 2020, Miner was paid an additional 71.5 vacation days as part of his retirement package;

    D. Miner's retirement was also compensated by using 25 days of "department time", which is a concept not recognized by district policy and which appears to have been created for bookkeeping purposes specifically for Miner's benefit;

    E. Additionally, Miner's retirement was compensated by using three holidays "floated" from prior months, including Easter and Memorial Day holidays credited to Miner in June of 2020, even though the district did not have any policy permitting such a use of a holiday benefit;

    F. On information and belief, Miner's "accrued time" claim was false and was effected unlawfully by Miner, or at his request or direction, in relation to his 2020 retirement.

### Miner's "Sick Leave" Payments

  9. Per district policy, an employee would also receive payment of accrued sick leave in a maximum amount of 140 days, or 1120 hours, on his or her retirement. The accrued leave was required to be paid into the employee's "VEBA" account, which stands for Voluntary Employee's Beneficiary Association. A VEBA plan is a tax-exempt trust funded by an employer to help pay for an employee's eligible medical expenses.

  10. District records reflect that Miner had earned sick days during his employment but that he had either used these sick days, or had the district "buy back" the accrued days for cash (under a separate district policy). Sick days that had been used or bought back by the district were expended and no longer creditable, and the spent days could not accrue to Miner's benefit.

  11. Still, the district's records reflected that Miner had somehow "accrued" 112 days (896 hours) of sick time at the time of the May 26 execution of Miner's consulting agreement, and that number increased to 114 days (912 hours) as of Miner's June 2 retirement date.

  12. Moreover, on June 2, the last day of his employment as fire chief, Miner was credited with 260 sick days (2080 hours). There is no explanation in the district's records as to how or when or why these hours were accrued or credited to Miner's sick leave account.

4

13. Despite these accounting discrepancies, the district's previous board of directors paid Miner sick leave commensurate to the 2080 hours dumped into his account on June 2. The total amount of $121,746.24 was paid to his VEBA account in two installments, $40,582.08 on December 22, 2020 and $81,164.16 on May 20, 2022.

14. On information and belief, Miner's sick leave credits were entered into the district's accounting program unlawfully by Miner, or at his request or direction, in conjunction with his 2020 retirement.

### Other Miner Benefits

15. Miner's May 26 agreement further provided Miner with an option to purchase his command vehicle, a loaded 2016 Chevrolet Tahoe LT, for $7,500.00, in "as is" condition.

    A. The option was to become effective once the vehicle was declared surplus property. The board of directors so declared the vehicle by motion immediately following their vote to approve the Miner contract on May 26.

    B. Miner apparently exercised this option, but not before arranging a repair for the Tahoe in the sum of $2,926.78, which was completed on June 26, 2020 and paid for with Miner's District credit card on June 30, 2020. District records do not reflect that this work was ever approved by the board of directors. The district assigned the vehicle's title to Miner on July 17, 2020.

    C. At the time of Miner's acquisition of the 2016 Tahoe, its fair market value is estimated to have been $34,000.00. (Depending on condition and mileage, today's value is estimated to be $25,000.00-$30,000.00.)

16. Miner's contract also required that the district provide him with a cell phone, laptop, iPad, and internet service for the duration of his consulting agreement. The district has no record

establishing that Miner returned these items at the end of his contract "service" time. The cost of these items, along with internet and call car service, is estimated to be $3,087.62.

17. Finally, Miner's retirement agreement allowed him to receive an additional pension drop of approximately $10,000.00 for the time in which he served as a "consultant", because the contract entitled him to "full benefits", which included the noted pension contribution.

18. All tolled, the district estimates the minimum financial benefits paid unlawfully to Miner as a direct result of his consulting contract at $230,327.43.

## Count I—Declaratory and Injunctive Relief

19. Section 432.070 of the Revised Statutes of Missouri prohibits municipal corporations, including the district, from entering into any contract unless the contract is "authorized in writing" by the governmental body, which requires authorization on the public record of the terms and conditions of the contract.

20. Miner's contract did not specify the nature, scope, or extent of the services he would be providing to the district, nor did it approve any specific amount of compensation, and this vagueness permitted Miner to be compensated for vacation time, department time, holiday time, and sick time unlawfully credited to Miner in violation of the district's retirement policies.

21. Section 432.070 also prohibits a public body from entering into a contract that is not within the scope of its powers.

22. Miner's "consulting agreement" was not within the scope of the district's powers, because: (a) the contract's consideration was not specifically approved by the district's board of directors as required by Section 432.070, (b) the vague nature of the contract permitted Miner to be paid for the unlawful accrual of the noted and purported compensatory time, (c) the contract was designed to grant Miner extra compensation for his previous service as fire chief in violation

of Article III, Section 39(3) of the Missouri Constitution, and (d) the contract was intended to grant Miner public money and other things of value for his private benefit and without any public purpose in violation of Article IV, Section 23 of the Missouri Constitution.

23. Pursuant to Missouri law, a contract entered into in violation of Section 432.070 is void and unenforceable.

24. Miner's contract violated Section 432.070 and is void.

25. Miner received payment from the district pursuant to the void contract in the estimated amount of $230,327.43.

26. The district has no legal remedy for declaring Miner's contract void under Section 432.070 RSMo., and the district and its taxpayers will suffer the irreparable loss of public funds if the contract is not declared void and the money paid to Miner is not refunded.

WHEREFORE, plaintiff prays that the Court determine and declare that the Miner contract is void as being in violation of Section 432.070 RSMo. and further enjoin defendant Miner to reimburse the district in the sum of $230,327.43, or such amount as the Court may determine has been unlawfully paid to Miner pursuant to the contract, plus interest, and for such further relief as is just and proper.

## Count II—Breach of Contract (Alternative Claim)

27. If Miner's contract is found to be lawful, then Miner must be found to have breached the contract, because the district performed under the contract by paying Miner, while Miner failed to provide the services contemplated by the contract.

28. The district suffered damages as a result of the defendant's breach, specifically the payment of $230,327.43 to Miner in reliance on the contract.

WHEREFORE, plaintiff prays that the Court enter judgment in its favor and against Miner in the sum of $230,327.43, or such amount of damages as the Court may determine has been suffered by the plaintiff, plus interest, and for such further relief as is just and proper.

### Count III—Money Had And Received/Unjust Enrichment

29.     Miner received compensation from the district to which he was not entitled, because: (a) his contract violated Section 432.070; (b) he performed no consulting services under the agreement; (c) his claims of accrued vacation, "department" time, holiday pay, and sick leave were false, violated the district's policies, and were inherently excessive, (d) his purchase of a 2016 Chevy Tahoe at far less than market value, and his use of pubic funds to repair that vehicle prior to its purchase, deprived the district's taxpayers of the true value of the vehicle, and (e) he received an additional pension payment made as a result of his illegal "consulting services" contract.

30.     Miner's payments under all of these circumstances violated Missouri law and were unjust, yet Miner accepted, appreciated, and retained those benefits to the detriment of the district and its taxpayers.

WHEREFORE, plaintiff prays that the Court enter judgment in its favor and against Miner in the sum of $230,327.43, or such amount of damages as the Court may determine has been suffered by the plaintiff, plus interest, and for such further relief as is just and proper.

Electronically Filed - ST LOUIS COUNTY - September 13, 2023 - 03:25 PM

        Respectfully submitted,

        Paul Martin Law, LLC

By:   /s/ Paul Martin
        Paul Martin, MBE#34428
        9322 Mancehster Road
        St. Louis, Missouri 63119
        (314) 805-8800
        paul@paulmartinlaw.org

        Attorney for Plaintiff