# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| ROBERTSON FIRE PROTECTION DISTRICT, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:24-cv-0026-JAR |
| DONALD D. MINER, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's motion for partial summary judgment on Count I of its First Amended Petition [ECF No. 28]. The motion is fully briefed and ready for disposition. For the reasons set forth below, the motion will be denied.

**I.    Background**

The following facts, unless otherwise stated, are taken from Plaintiff's First Amended Petition [ECF No. 8], Plaintiff's Statement of Uncontroverted Material Facts (which Defendant has admitted in full) [ECF No. 29], and Defendant's Statement of Additional Uncontroverted Material Facts [ECF No. 34].

Plaintiff Robertson Fire Protection District ("District") is a political subdivision and municipal corporation of the State of Missouri created to provide fire protection and emergency services to St. Louis County residents. It is a public entity governed by the applicable Missouri statutes and the Missouri Constitution regarding such public entities. Defendant Donald D. Miner ("Miner") is a former Fire Chief of the District who was hired in 2013 and retired in 2020. Upon his retirement, Miner and the District executed an Employment Agreement ("Agreement") on May 26, 2020.

The stated purpose of the Agreement "is to address the retirement employment agreement of Chief Don Miner." The Agreement provides the terms of Miner's compensation after his retirement and for additional services to the District. Beginning on June 3, 2020, the Agreement states Miner "shall continue in the employ of [the District] using accrued leave while working in a transition/consultant [sic] with full salary and benefits, until all accrued leave is exhausted. Accrued leave does not include sick leave." The Agreement additionally states that "[a]ccrued sick leave will be paid into Miner's VEBA account," disbursed over a three-year period or less. The Agreement also specifies that the District will provide Miner certain items and equipment for his consultant role, as well as an option to purchase a District vehicle for $7,500 "as is" without warranty upon it being declared "surplus property" by the District [ECF No. 8-1 at 1].

Other provisions of the Agreement relate to the legal duties of the parties. Pursuant to the Agreement, Miner is to attend all attorney conferences, court proceedings, depositions, and other litigation matters related to the District until such matters are concluded [*Id.*]. If Miner is required to attend legal proceedings or meetings, the District must compensate him for expenses incurred. Lastly, the Agreement states that the "District shall indemnify and hold Miner harmless as to all matters relating to his participation, testimony, litigation preparation or other legal efforts on his part related to [District] issues or in the exercise of his duties as Chief." [*Id.* at 2].

The District now brings this action to recoup public money it claims was unlawfully paid to Miner. The District's First Amended Petition states three counts against Miner. Count I, the relevant count for purposes of this motion, requests declaratory and injunctive relief by means of a Court determination that the Agreement is void and an order directing Miner to reimburse the District in the amount unlawfully paid to him, which the District estimates to be $230,327.43.

To supplement his response and statement of additional uncontroverted facts, Miner has presented several exhibits, including records of his accrued sick leave and accrued vacation leave. The records show that Miner had a total accrued sick leave of 1,976 hours [ECF No. 34-2 at 1] and a total accrued vacation leave of 567 hours [ECF No. 34-3 at 1]. Miner has also presented an employment agreement from 2012 between the District and former Chief David J. Tilley [ECF No. 34-1]. Miner claims that the 2012 agreement, which similarly addressed the terms of Tilley's retirement, establishes that the District "had a course and practice of recording and paying prior fire chiefs for accrued unused annual vacation time." [ECF No. 34 at 2].

The District disputes all of Miner's statements of fact and the validity of his exhibits. Of relevance to the present motion, the District denies Miner's contention that the District had a "policy and practice of recording accrued unused sick time" on the basis that the cited materials are not admissible evidence, lack foundation and authentication, and do not establish existence of a policy or practice. The District objects to all of Miner's statements of fact concerning the exhibits on the basis that the evidence has not been authenticated, lacks foundation, and does not establish a method for how the purported calculation of leave time was calculated [ECF No. 38].

On December 11, 2024, the District filed a motion for partial summary judgment on Count I of its First Amended Petition. Miner filed a response in opposition to the motion, to which the District filed a reply.

## II.     Summary Judgment Standard

"Summary judgment is proper where the evidence, when viewed in the light most favorable to the nonmoving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Spears v. Missouri Dept. of Corrections and Human Resources*, 210 F.3d 850, 853 (8th Cir. 2000); Fed. R. Civ. P. 56(a). At

the summary judgment stage, it need not be proved that the evidence would be admitted, but only that it "*could* be presented at trial in an admissible form." *Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019) (citation omitted) (emphasis in original).

If there are factual disputes that may affect the outcome of the case under the applicable substantive law, summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it relates to the legal elements of the claim. *Id.* A dispute of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.* "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252. The nonmoving party may not rely on allegations or denials but must substantiate its allegations with sufficient probative evidence that would permit a finding in its favor on more than mere speculation or conjecture. *Ball v. City of Lincoln, Nebraska*, 870 F.3d 722, 727 (8th Cir. 2017). Even if some factual dispute exists, if the evidence, taken as a whole, is so one-sided that a fair-minded trier of fact could not find for the nonmovant, then there is no genuine issue for trial, and the movant is entitled to summary judgment. *Id*.

### III. Discussion

#### A. Void for Indefiniteness/Uncertainty

The District argues that the Agreement is void because it runs afoul of R.S.Mo. § 432.070, a Missouri statute which requires any contract by a municipal entity state its consideration expressly in writing. *See* MO. REV. STAT. § 432.070. According to the District, the consideration to be paid to Miner under the Agreement was not sufficiently definite and certain to represent an enforceable contract under Missouri law. Specifically, the failure to specify a

dollar amount and to define the forms of "leave" supposedly to be paid to Miner render the contract too vague to be enforceable.

Under Missouri law, failure to comply with § 432.070 makes a contract "void *ab initio*, not merely voidable." *STL Riverview Plaza LLC v. Metro. St. Louis River Dist.*, 681 S.W.3d 290, 298 (Mo. App. E.D. 2023) (citation omitted). "[T]he manifest purpose of [§ 432.070] is that the terms of the contract shall, in no essential particular, be left in doubt, or to be determined at some future time, but shall be fixed when the contract is entered into." *Bride v. City of Slater*, 263 S.W.2d 22, 26 (Mo. 1953) (quoting *Woolfolk v. Randolph Cnty.,* 83 Mo. 501, 506 (Mo. 1884)).

Contracts made by municipalities, if properly authorized and expressed in written form, are scrutinized under the same principles as any other contracts. *Burger v. City of Springfield*, 323 S.W.2d 777, 783 (Mo. 1959). The written consideration must be definite and certain to the extent that a court can determine damages in the event of a breach. *Id.* (citations omitted). Contract terms are sufficiently certain to be enforceable if they are capable of being rendered certain through "ordinary canons of construction or by reference to something certain." *City of Malden v. Green*, 779 S.W.2d 354, 356 (Mo. App. S.D. 1989). A contract can be rendered certain "by computation or reference to extrinsic facts." *Burger*, 323 S.W.2d at 784 (citation omitted). "Courts do not favor the destruction of agreements, but will, if feasible, construe agreements so as to carry into effect the reasonable intention of the parties." *Computer Network, Ltd. v. Purcell Tire & Rubber Co.*, 747 S.W.2d 669, 674 (Mo. App. E.D. 1988) (citations omitted). "A contract should not be held void for uncertainty unless there is no possibility of giving meaning to the agreement." *Id*. at 676.

In *Burger v. City of Springfield*, a contract promising "reasonable compensation for services and expenses to be fixed by the Council upon the completion of [a person's] services"

was upheld as sufficiently definite and certain to survive a challenge under § 432.070. 323 S.W.2d at 785. "The mere fact that, at the time the contract was executed, the amount to be paid by the City could not then be determined in dollars and cents did not adversely affect the validity of the contract." *Id.* at 784. As long as there is some "measuring rod" or "guide" by which the consideration can be determined, such as the common specification of "reasonable compensation" for services, a contract is not necessarily void for uncertainty. *Id*. (citations omitted).

Here, the terms of the Agreement provide that Miner would continue to work for the District in a transition or consultant role "using accrued leave" with full salary and benefits [ECF No. 8-1 at 1]. As detailed above, the Agreement specifies that accrued leave "does not include sick leave" [*Id.*]. The Agreement provides a different mechanism for the payment of accrued sick leave, which would be paid into Miner's account over a three-year period or less [*Id.*]. Miner's exhibits appear to show the amount of vacation leave and sick leave accrued by Miner, which was 567 hours [ECF No. 34-3 at 1] and 1,976 hours [ECF No. 34-2 at 1] respectively.

The District argues that all of the exhibits furnished by Miner are inadmissible, but on their face the exhibits appear relevant to the computation of Miner's accrued leave and sick leave and consequently to the determination of consideration under the Agreement. *See STL Riverview*, 681 S.W.3d at 299 ("If a writing omits an essential term, it is considered incomplete and extrinsic evidence may be introduced to establish the parties' intent.") (citation omitted). On summary judgment, the nonmovant does not need to conclusively establish admissibility of its evidence to generate a genuine dispute of a material fact, but only needs to show that the evidence "could be presented at trial in an admissible form." *See Smith*, 926 F.3d at 485. The Court finds that

Miner's exhibits are potentially admissible and will be considered for purposes of summary judgment.[1]

The District also contends that the promise of payment of "accrued leave" and "accrued sick leave" is too vague to be enforceable pursuant to § 432.070 because the Agreement does not explicitly define the terms or specify any dollar amounts and there is no method or standard by which "accrued leave and sick leave" can be measured. However, an exact dollar amount is not required. *See Burger*, 323 S.W.2d at 784. Further, the records provided by Miner may be used as extrinsic evidence to establish the parties' intent regarding consideration and to give meaning to the terms under the Agreement. *See City of Malden*, 779 S.W.2d at 356 ("The consideration to be paid and a document purporting to be a contract can be made certain by reference to extrinsic facts so referred to."). The records showing the total hours of vacation leave and sick leave accrued by Miner constitute a "reference to something certain" which enables the Court to give consideration under the Agreement an exact meaning. *Id*. With reference to the records, the term "accrued leave" under the Agreement may be interpreted to mean the total hours of vacation leave and personal leave accrued by Miner, and "accrued sick leave" may naturally be interpretated to mean the total hours of sick leave accrued by Miner.

Miner's assertion that the exhibits establish a "policy and practice" of compensating former fire chiefs with accrued leave and recording unused leave for its employees, which the District disputes, need not be adjudicated at this stage of the proceedings. Rather, the relevant issue is whether the exhibits establish a real dispute over the enforceability of the Agreement's terms. Given Miner's evidence providing a fixed method by which his compensation could be

---

[1] The Court is not making a ruling on the admissibility of the evidence at this stage. Notwithstanding some of Miner's factual assertions which are unsupported by material evidence, the exhibits filed with the Court support Miner's position concerning his accrued leave and sick leave [ECF Nos. 34-2–34-3].

computed at the time the Agreement was made, there is at minimum a live dispute concerning the Agreement's enforceability. Viewing the facts in the light most favorable to Miner, a reasonable factfinder could conclude that the parties agreed that Miner's "accrued leave" and "accrued sick leave" would be paid over the remaining duration of his employment based on District documents tracking his accrual of leave, and that the District's data represents a "sufficiently definite" yardstick for the determination of consideration. *Burger*, S.W.2d at 783. As it is possible to give meaning to the terms "accrued leave" and "accrued sick leave," the Agreement will not be held void for uncertainty. Therefore, the Court will deny partial summary judgment on this ground.

### B. Indemnification Provision

The District further argues that the promise to "indemnify and hold Miner harmless" in any District legal matters creates a perpetual obligation on the part of the District in violation of Article VI, Section 26(a) of the Missouri Constitution. Section 26(a) forbids any political subdivision of the state from becoming "indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years." MO. CONST. art. VI, § 26(a). The District maintains that the lack of a severability clause in the Agreement renders the entire contract void.

The Supreme Court of Missouri has held that contracts in violation of Section 26(a) of the Missouri Constitution are voidable, not void. *Mercantile Bank of Ill., N.A. v. School Dist. of Osceola*, 834 S.W.2d 737, 741 (Mo. 1992) (en banc) (overruling *Grand River Tp., De Kalb County v. Cooke Sales & Service, Inc.*, 267 S.W.2d 322 (Mo. 1954)). Specifically, a municipal "contract is *voidable* on a factual showing that the contracted expenditure exceeded the [municipality's] ability to pay it with revenues in the year it was due." *Id*. at 740 (emphasis in original).

Thus, the parties' Agreement is not void under Section 26(a) and would only be voidable on a factual showing that the indemnification clause produced an expenditure that exceeded the District's ability to pay. No such showing has occurred here. There is also no indication that open-ended indemnification clauses run afoul of Section 26(a). As conceded by the District, no Missouri authority has construed Section 26(a) to apply to indemnification clauses. The two decisions from other jurisdictions cited by the District are not ultimately persuasive. The U.S. Court of Federal Claims in *E.I. DuPont De Nemours and Co., Inc. v. U.S.*, 54 Fed. Cl. 361 (2002) found that the federal Anti–Deficiency Act ("ADA") barred the enforcement of open-ended indemnification clauses without appropriation or express statutory authority, but that decision only reaches the applicability of the ADA and is therefore inapposite. Likewise, the opinion of the Attorney General of Maryland, 71 Md. Op. Atty. Gen. 274 (1986), which posits that a contract provision cannot be given legal effect if it requires the state to indemnify without limit another state and its employees, is inapplicable. Absent authority to the contrary, the Court concludes that the indemnification provision of the Agreement does not violate the Missouri Constitution. Hence, the Court will deny partial summary judgment on this ground as well.

### IV.   Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for partial summary judgment [ECF No. 28] is **DENIED**.

Dated this 11th day of March, 2025.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE